IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| STARLLA D. KINGFISHER-MILLER, | § | |
|     Plaintiff, | § | |
| | § | No. 9:17-CV-00121- KFG |
| v. | § | |
| | § | |
| | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
|     Defendant. | § | |

## ORDER

Plaintiff, Starlla D. Kingfisher-Miller, requests judicial review of a final decision of the Commissioner of Social Security Administration with respect to her application for disability-based benefits. The undersigned finds that the administrative law judge's decision lacks reversible error, is supported by substantial evidence, and therefore affirms the decision denying benefits.

### Factual History and Testimony Before the Administrative Law Judge (ALJ)

Kingfisher-Miller was fifty-one years old at the time of the hearing before the ALJ. She has completed some college courses, was employed as a truck driver for thirty-one years, and was previously employed as a flagger traffic controller. Kingfisher-Miller was employed for three days at a poultry processing plant in September of 2015 until she suffered a heart attack. She currently lives in an RV on her mother's property. She claims disability due to seizures, severe body pains, muscle spasms, and migraine headaches. She also suffers from anxiety, chest pain, arthritis, asthma, hypertension, obesity, bipolar disorder, depression, and PTSD. In addition, she has a hearing loss and experiences some dizziness and balance problems. Kingfisher-Miller receives

food stamps and has seen a nurse practitioner through an indigent care program. Her mother helps her purchase medications. Kingfisher-Miller alleges that she suffers from lupus flare-ups two or three times each month. According to Kingfisher-Miller, when she experiences a flare-up, she is bedridden for days. The lupus causes her to have muscle spasms for which she was prescribed cyclobenzaprine. She developed seizures at the age of fourteen and currently experiences one per week while on medication. She was taking Lamotrigine for her seizures but is currently taking Gabapentin.

Kingfisher-Miller has lost her hearing in her left ear and suffers from dizzy spells and balance problems. She also suffers from asthma and uses an inhaler. In addition, she testified that she suffers from depression, anxiety, and PTSD.

Kingfisher-Miller is able to take care of her own personal hygiene and grooming. She is able to perform household chores and manages her own medications. She takes care of her pets and gets along well with some of her family members. She enjoys walking for exercise, but does not like to go shopping, primarily because of her dislike of being around large groups of people.

On September 18, 2015, Kingfisher-Miller filed a Title II application for a period of disability and disability insurance benefits. She also filed a Title XVI application for supplemental security income on September 21, 2015. In both applications, she alleged disability beginning June 24, 2015. These claims were denied initially on January 26, 2016, and upon reconsideration on April 25, 2016. Kingfisher-Miller thereafter requested an administrative hearing. She appeared with legal counsel and testified at a hearing held on December 9, 2016 in Nacogdoches, Texas before Administrative Law Judge (ALJ) Gerald L. Meyer. In his decision dated January 6, 2017, the ALJ held that Kingfisher-Miller had not been under a disability, as defined in the Social Security Act, from June 24, 2015, through the date of his decision.

**The Administrative Decision**

The ALJ utilized the five-step sequential evaluation process, discussed *supra,* in deciding Kingfisher-Miller's disability claim. At steps one and two, the ALJ found that Kingfisher-Miller met the insured status requirement through December 31, 2015, and had not engaged in substantial gainful activity since her alleged onset date of June 24, 2015. At steps three and four, he found that Kingfisher-Miller had the following severe impairments: lupus erythematosus; chest pain; arthritis; seizure disorder; asthma; hypertension; obesity; and affective disorder, but concluded that these impairments did not meet or medically equal a listed impairment.

Next, the ALJ determined that Kingfisher-Miller retained the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(b) and 416.967(b), except she can only lift or carry twenty pounds occasionally and ten pounds frequently; she can sit, stand, or walk for six hours in an eight hour day; she can sit for six hours in an eight hour day; she can never climb ropes, ladders, or scaffolds; she can occasionally climb ramps or stairs; she can never crawl; she can occasionally balance, stoop, or crouch; she can never be exposed to extreme cold; she may never be exposed to dust, fumes, chemicals, gases, odors, or poor ventilation; she may never work at unprotected heights or around dangerous moving machinery; she can perform simple, one to three step procedures that are routine and repetitive, without frequent changes in duties; she can understand, remember, and carry out simple instructions; and she can have only occasional contact with the general public. In making this determination, the ALJ found that Kingfisher-Miller's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible for many reasons, including the lack of support in her medical records.

The ALJ then determined that Kingfisher-Miller was unable to perform any past relevant work as a truckdriver and flagger. Based on testimony from the vocational expert, Kingfisher-Miller's residual functional capacity, her age, education, and work experience, the ALJ determined that there were jobs existing in significant numbers in the national economy that she can perform. The ALJ agreed with the vocational expert's testimony that Kingfisher-Miller could perform representative occupations including: house sitter, sewing machine operator, and/or rug cleaner. Accordingly, the ALJ determined that Kingfisher-Miller was not disabled during the relevant period. Kingfisher-Miller requested review of the administrative decision; however, the Appeals Council declined review. Therefore, the ALJ's Meyer's decision serves as the Commissioner's final decision for purposes of judicial review pursuant to 42 U.S.C. § 405(g).

**<u>Judicial Review</u>**

Review of Social Security disability cases "is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)); *see generally* 42 U.S.C. § 405(g) (describing and elaborating on the standard for judicial review of decisions of the Commissioner of Social Security). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Perez*, 415 F.3d at 461 (citation and internal quotation marks omitted). It refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citation and quotation marks omitted). In applying this standard, the court "may not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (internal citation omitted). The court may affirm only on the grounds that the Commissioner stated for his decision. *Cole v. Barnhart,* 288 F.3d 149, 151 (5th Cir. 2002) (per curiam).

In order to qualify for disability benefits, a claimant must suffer from a disability. *See* 42 U.S.C. § 423(d)(1)(A). The Social Security Act defines a disability as a "medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity." *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002); *see also* 42 U.S.C. § 423(d)(1)(A). The Commissioner typically uses a sequential five-step process to determine whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *see also Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The analysis is:

> First, the claimant must not be presently working. Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [his] physical or mental ability to do basic work activities. Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations ["The Listings"]. Fourth, a claimant must establish that his impairment prevents him from doing past relevant work. Finally, the burden shifts to the Secretary to establish that the claimant can perform the relevant work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested.

*See Waters*, 276 F.3d at 718 (quoting *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991)); *see generally* § 404.1520. The claimant bears the burden of proof with respect to the first four steps of the five-step analysis. *Waters,* 276 F.3d at 718. If at any step the Commissioner finds that the claimant is or is not disabled, the ALJ need not continue the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Reviewing courts give the Commissioner's decisions great deference. *Id.* at 565-66. Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Comm'n,* 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v.*

5

*Chater,* 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). When the Commissioner fails to apply correct principles of law, or when substantial evidence does not support the Commissioner's decision, the governing statute authorizes a reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. *See* 42 U.S.C. § 405(g). Thus, courts have the power to remand for further administrative proceedings, or they may direct the Commissioner to award benefits without a rehearing. Ordinarily, courts remand for further administrative proceedings to address and cure deficiencies. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

**Issues on Appeal and Legal Analysis**

> **1. Did the ALJ err in evaluating the opinion of the consultative examiner, leaving Kingfisher-Miller's residual functional capacity unsupported by substantial evidence?**

Medical records indicate that Dr. Frankie Clark conducted a consultative psychological examination on December 4, 2015. At the examination Kingfisher-Miller did not exhibit any behavior or speech abnormalities. She appeared cooperative, although somewhat agitated at the examination. She reported having frequent crying spells, seizures, lupus, high blood pressure, and memory loss. Although she reported that was not able to be around groups of people, she stated that she had no problems with authority figures. She stated that she had never been hospitalized for her mental conditions and was able to take care of her personal needs and household chores. She related that she spends time caring for her pets, sitting outside, and watching television. She also noted that she was recently diagnosed with bipolar disorder and began taking Lamictal, an anticonvulsant mediation used to treat epilepsy and bipolar disorder. Dr. Clark noted that she was well oriented with reality and her judgment and insight were intact. Dr. Clark diagnosed her with

bipolar disorder 1, with her most recent episode manic. Dr. Clark found that she would have difficulty with instructions, persistence, and pace, getting along with others, and dealings with on the job pressures. The ALJ found Dr. Clark's opinion to be thorough and assigned it great weight.

Kingfisher-Miller initially argues the ALJ's determination of residual functional capacity (RFC) is unsupported by substantial evidence because the ALF failed to reconcile the opinion of Dr. Clark or alternatively, recontact him for more definite limitations regarding her mental impairments. She contends that the ALJ failed to explain why certain limitations contained in the medical opinion were not included in the RFC. She argues that Dr. Clark noted that she would have difficulty with instructions, persistence and pace, getting along with others, and dealing with pressures on the job. In addition, she notes that Dr. Clark indicated that she has poor vision, trouble sleeping, is agitated, has thoughts of suicide, and had problems spelling certain words backwards and counting by multiples.

The Commissioner responds that Dr. Clark's report is consistent with the ALJ's RFC assessment in that, in many ways, her mental status was normal. The Commissioner argues that an RFC is an administrative finding of fact and that an ALJ is not required to adopt a medical opinion in full. Further, the Commissioner argues that by limiting Kingfisher-Miller to unskilled work, the ALJ sufficiently accounted for Kingfisher-Miller's difficulty with instructions, persistence and pace, dealing with job pressures, and getting along well with others.

The RFC determination is "the sole responsibility of the ALJ." *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012). The proper inquiry in reviewing an ALJ's RFC assessment is whether substantial evidence supports it. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The RFC determination is reserved to the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-5p. Additionally, the RFC assessment represents the most a claimant can do despite her impairments,

not the least. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The Court finds that the objective medical evidence, medical opinion evidence, and Kingfisher-Miller's subjective statements support the ALJ's RFC determination.

Although Dr. Clark did opine that Kingfisher-Miller would have difficulty with instructions, persistence and pace, getting along with others, and dealing with pressures on the job, the ALJ adequately addressed those limitations by limiting her to only simple, 1 to 3 step procedures that are routine and repetitive, without frequent changes in duties, understanding, remembering, and carrying out only simple instructions, and only occasional contact with the general public. In addition, this RFC is supported by the opinions of the State agency non-examining psychologist who opined that Kingfisher-Miller could understand, remember, and carryout only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting. In conclusion, substantial evidence supports the ALJ's determination of Kingfisher-Miller's residual functional capacity (RFC).

In a related argument, Kingfisher-Miller contends that the ALJ should have re-contacted Dr. Clark to provide a definitive evaluation of her specific function-by-function mental limitations. However, if the record is sufficient to establish whether the claimant is disabled, as it is here, then the Regulations do not require the ALJ to order more evidence. See *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012). In addition, the Regulations only require the ALJ to request more evidence if the evidence from the *treating* physician or psychologist or other medical source is inadequate. *Jones*, 691 F.3d at 733 (emphasis added). This Court notes that Dr. Clark was a consultative psychological examiner and was not a treating physician. Therefore, the ALJ had no duty to recontact her even if her opinions were inadequate. *See Givens v. Berryhill*, No. 4:17-CV-00145-

Y-BP, 2018 WL 1955289 at *5 (N.D. Tex. Mar. 30, 2018)(no duty to recontact physician who is not a treating physician even if his opinions are inadequate).

> **2. Did the ALJ err in failing to request a functional assessment from treating providers or order a consultative examination to evaluate Kingfisher-Miller's lupus erythematosus?**

As stated above, Kingfisher-Miller argues that her lupus flare-ups caused her to experience seizures and spend a considerable amount of time in bed. Kingfisher-Miller argues that the ALJ failed to fully develop the record and should have ordered a consultative examination to develop the record of her chronic problem of lupus erythematosus. She asserts that she could not afford treatment for her lupus which accounts and explains her lack of treatment. She further argues that her lupus is severe and her lack of ability to afford treatment should not be used to establish that she is not disabled. In addition, she contends that her seizures caused by her lupus caused off-task time which was not accounted for in the ALJ's residual functional capacity (RFC).

The ALJ only has a duty to further develop the record when there is not sufficient evidence in the record to allow a proper determination of the claimant's capacity to work. *See Harper v Barnhart,* 176 Fed. Appx. 562, 566 (5th Cir. 2006). The decision to order a consultative examination is within the ALJ's province. *Anderson v. Sullivan,* 887 F.2d 630, 634 (5th Cir. 1989).

The ALJ considered Dr. Saurabh Singh's consultative examination on December 2015, which he gave great weight. Dr. Singh found that there was no clinical evidence of lupus, such as a rash or synovitis. He further opined that Kingfisher-Miller could perform basic work activities including sit, stand, move about, lift, carry, but no sharp instruments or potentially dangerous activities due to her seizure disorder. The ALJ also looked at Kingfisher-Miller's treating primary care physician's records, which showed that she did not regularly report any signs of symptoms of lupus, which he found consistent with Dr. Singh's findings. The ALJ relied upon both Dr. Singh's

medical opinions and with her primary care doctor, to determine that Kingfisher-Miller's lupus did not warrant any further limitations.  The records indicate that Kingfisher-Miller's lack of treatment is not the reason the ALJ did not include further limitations for her lupus, but rather the lack of clinical evidence.  The ALJ had substantial evidence to support his findings and RFC, without the need to order any further assessments or consultative examinations.

**Conclusion**

The Court accordingly concludes that the Commissioner did not err in his decision denying Kingfisher-Miller's application for disability benefits.  It is therefore ordered that the Commissioner's decisions be affirmed and Kingfisher-Miller's complaint be dismissed.

**SIGNED this the 19th day of July, 2019.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE